IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELISHA RIGGLEMAN, | : |
| | : |
| Petitioner | : |
| | : CIVIL ACTION NO. 3:18-CV-0771 |
| v. | : |
| | : (Judge Caputo) |
| DAVID J EBBERT, | : |
| | : |
| Respondent | : |

**M E M O R A N D U M**

Presently before the Court is Petitioner Elisha Riggleman's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1), Motion for Defendant to Provide Material (ECF No. 9), Motion to Expedite (ECF No. 10), Motion to Present Exhibit (ECF No. 11), Motion to Compel Judgement (ECF No. 13) and Motion for Verdict (ECF No. 14). Mr. Riggleman, proceeding *pro se*, raises two arguments: (1) he was denied his due process rights to appeal the results of a disciplinary hearing when he was not timely provided with a copy of the report; and (2) the disciplinary finding was not supported by the evidence presented at the hearing. (ECF No. 1, *generally*.)

The Court will grant Mr. Riggleman's motion to present an exhibit (ECF No. 11) but deny his motion to compel Respondent to provide additional materials (ECF No. 9). Petitioner's motions to compel a decision in this matter (ECF Nos. 10, 13 and 14) will be denied as moot. The Petition (ECF No. 1) will be denied because the disciplinary hearing officer's decision was supported by "some evidence."

## II. Legal Standard

A challenge to a disciplinary action resulting in the loss of good conduct time is properly brought pursuant to 28 U.S.C. § 2241, "as the action could affect the duration of the petitioner's sentence." *Queen v. Miner*, 530 F.3d 253, 254 n. 2 (3d Cir. 2008).

## III. Background

### A. Overview of the Disciplinary Hearing Officer Hearing & Administrative Remedy Process

If an inmate is believed to have violated BOP regulations, a staff member will prepare an Incident Report and provide the inmate with a written copy of the charges against him. *See* 28 C.F.R. § 541.5(a). An Incident Report can be resolved informally by an Investigating Officer or a Unit Disciplinary Committee (UDC). *Id.*, § 541.5(b)(3) and § 541.7(a). However, the UDC may also refers the Incident Report to a Disciplinary Hearing Officer (DHO) for further review. 28 C.F.R. § 541.7(a)(3). When charges are referred to the DHO, the UDC will advise the inmate of his rights at the upcoming DHO hearing. *Id.*, § 541.7(g). An inmate may request a staff representative and/or witnesses attend the DHO hearing. *Id.*, § 541.8. At the hearing, the inmate may make a statement, remain silent, present documentary evidence, and present witnesses on his behalf, subject to institutional security issues. *Id.*, § 541.8(f).

The DHO considers all evidence presented at the hearing and determines whether the inmate committed the infraction, or whether further investigation is needed. *Id.*, § 541.8(a). Following the hearing, the DHO prepares a written record of the proceedings, which need not be verbatim. *Id.*, § 541.8(h). The written DHO Report documents the advisement of the inmate's rights, the evidence offered at the hearing,

evidence relied upon by the DHO, the DHO's decision, and reasons for the actions taken and sanctions imposed. *Id.* The DHO Report is completed "ordinarily within 15 work days of the decision". *See Inmate Discipline Program*, Program Statement (PS) 5270.09, at 34 (eff. Aug. 1, 2011).

An inmate may appeal the DHO's actions via the BOP's Administrative Remedy Program. 28 C.F.R. § 541.8(i); *see also Id.*, § 542.10 *et seq.* The inmate initially appeals the DHO's actions directly to the Regional Director within twenty (20) calendar days of notice of the DHO's decision and disposition. *Id.*, § 542.14(a) and § 542.14(d)(2); *see also* ECF No. 5-1 at 35. This period may be extended for a "valid reason." *Id.*, § 542.14(a). An inmate may then appeal the Regional Office's decision to the General Counsel (Central Office) within "30 calendar days of the date the Regional Director signed the response." *Id.*, § 542.15(a). This is the final step in the BOP's administrative remedy process.

### B.   Incident Report 3039358

On September 30, 2017, Officer J. Wenrick issued Mr. Riggleman an Incident Report charging him with possession of a weapon, Code 104. *See* ECF No. 1-1 at 10 and ECF No. 5-1 at 31. Officer Wenrick's Incident Report, which Mr. Riggleman attached to his Petition, recounts the following facts:

> On 09/30/2017 at approximately 1:30 p.m. I was conducting a cell search of X-Block cell X-004 which is occupied by inmate Riggleman, Elisha #07411-088. While conducting the cell search, inmate Riggleman advised me that he was in possession of a flattened battery which was in the toilet paper holder area by the toilet in his cell. The item that I located in the toilet paper holder area was a battery that had been flattened and appeared to have been crafted into a homemade razor blade. This homemade razor blade was

> approx. 2in in length and was concealed inside of another flattened battery which appeared to be acting as a sheath for the homemade razor blade.

(ECF No. 1-1 at 10 and ECF No. 5-1at 31.) Further investigation of the incident was suspended pending referral of the matter to the FBI. (ECF No. 5-1 at 33.) After the FBI declined to pursue the matter, Lt. Stuart commenced his investigation of the charge. (*Id*. at 32.) He again provided Mr. Riggleman with a copy of Incident Report. Lt. Stuart advised Mr. Riggleman of his right to remain silent and read the Incident Report to him. Mr. Riggleman stated the object found in his cell "was a flattened out battery for fishing, it was not a weapon." (*Id*.) Mr. Riggleman declined to call witnesses at his DHO Hearing but requested J. Lesho as a staff representative. (*Id*.) The matter was then referred to the UDC. (*Id*.)

Mr. Riggleman appeared before the UDC on October 24, 2017. (*Id*. at 31.) Petitioner told the UDC "It was a fishing car." (*Id*.) The UDC referred the charge to the DHO for further disposition. (*Id*.) S. Hicks, the UDC Chairman, advised Mr. Riggleman of his rights, including the right to have a written copy of the charge, a staff representative to assist him at the DHO Hearing, and the right to present documentary evidence and witness testimony at the hearing before the DHO. Although Mr. Riggleman refused to sign the acknowledgement of these rights, S. Hicks indicated he personally provided them to Petitioner. (*Id*. at 34 – 35.) Again Mr. Riggleman did not request any witnesses to appear at the DHO hearing but requested J. Lesho as his staff representative. (*Id*. at 34.). On October 24, 2017, staff member Lesho agreed to serve as Petitioner's staff representative. (*Id*. at 36.)

### C. Mr. Riggleman's Disciplinary Hearing

A disciplinary hearing was held on November 6, 2017, more than 24 hours after Mr. Riggleman received notice of the hearing. (ECF No. 1-1 at 11 – 13 and ECF No. 5-1 at 39 – 41.) Mr. Riggleman denied the charge and made a statement which is summarized in the DHO report as follows:

> Inmate Riggleman acknowledge he understood his rights before the DHO and was ready to proceed with the hearing. Inmate Riggleman presented no documents for the DHO to consider. Inmate Riggleman testified that Section 11 of the incident report was not accurate. Upon being presented with a photograph of the items described in Section 11 of the incident report (attached to the incident report as evidence in this case), inmate Riggleman testified he was in possession of both of the items depicted in the photograph. Inmate Riggleman testified neither of the items in the photograph, however, were designed or intended to function as a "homemade razor blade" or any other sort of weapon. Riggleman testified both of the items were parts of a "fishing car" (a weighted item used to pass a string line, to which items are attached to be passed or "fish lined" (term used for the string line) from one inmate cell to another). Inmate Riggleman further testified, "I don't need a weapon. I'm in a cell by myself. What would I need a weapon for?" Inmate Riggleman made no complaints of procedural errors during the hearing.

(ECF No. 5-1 at 39.) Additionally,

> Mr. Lesho, Specialty Treatment Program Specialist, appeared as a staff representative on behalf of inmate Riggleman during the DHO hearing. Mr. Lesho stated inmate Riggleman made no specific requests of him as a staff representative in this case. Mr. Lesho stated inmate Riggleman is accepting responsibility for the items depicted in the photograph attached to the incident report as evidence in this case. Mr. Lesho stated inmate Riggleman contends the items depicted in the photograph, however were not designed or intended to function as weapons. Mr. Lesho stated inmate Riggleman contends the items depicted in the photograph are parts of a "fishing car" (a weighted item used to pass a string line, to which items are attached to be passed of "fish lined" (term used for the string line) from one

> inmate cell to another). Mr. Lesho stated inmate Riggleman informed him he (Riggleman) is "being framed for a weapon." Mr. Lesho stated he had no further information to present, nor statement to make, regarding this case.

(*Id.*)

The DHO found Mr. Riggleman guilty of possession of a weapon. (*Id.* at 40.) In addition to the Incident Report and Investigation, the DHO considered the photograph of the flattened AA battery casings found in Mr. Riggleman's cell. See *Id.* at 37, 40. The DHO also considered Mr. Riggleman's admission that the items depicted in the photograph were in his possession. The DHO considered Mr. Riggleman's testimony that the items were not intended to function as weapons but were parts of a "fishing car". (*Id.* at 40.) The DHO, however, gave the greater weight of the evidence to the facts of the reporting officer's report, the photograph of the seized items, and Mr. Riggleman's testimony of his possession of the items depicted in the photograph. (*Id.*)

> The DHO concedes that the flattened AA battery casing with a jagged/sharpened edge possessed by Riggleman in this case could have been used by Riggleman for multiple purposes. The fact remains, however, that the flattened AA battery casing with a jagged/sharpened edge could have easily been utilized as a weapon without any further modification. The DHO notes, and informed Riggleman during the hearing, that flattened AA battery casing with jagged/sharpened edges such as the one in Riggleman's possession have been used as weapons in multiple assaults in the Special Management Unit Program. The DHO has heard cases in which flattened AA battery casings with jagged/sharpened edges were used to lacerate the faces and bodies of assault victims causing serious injury, in some cases cutting all the way through the victim's flesh and muscle to the bone. In one case, a victim was nearly decapitated by an assailant using such an item as a weapon. Correctional experience has proven, therefore, that flattened AA battery casings with jagged/sharpened edges, such as the one possessed by inmate Riggleman, have been used on multiple occasions as weapons to assault both inmates and staff.

(*Id.* at 41.) Accordingly, the DHO determined Mr. Riggleman committed the offense of possession of a weapon (Code 104). (*Id.*) As a sanction for this offense, Mr. Riggleman received a total of sixty (60) days of disciplinary segregation, disallowance of forty-one (41) days of good conduct time, and the loss of commissary and visiting privileges for five (5) months. (*Id.*)

### D. Administrative Remedy 928339

The BOP represents that a staff member provided Mr. Riggleman with a copy of the DHO Report on November 9, 2017. (*Id.*) Mr. Riggleman states he first received a copy of the DHO Report on January 17, 2018. (ECF No. 1-1 at 8.)

On January 22, 2018, Mr. Riggleman filed Remedy 928339-R1 challenging the DHO's findings on Incident Report 3039358. (ECF No. 1-1 at 7 and ECF No. 5-1 at 19.) The appeal was rejected as untimely because it was not received within twenty (20) days of Mr. Riggleman's November 9, 2017 receipt of the DHO Report. It was also rejected because not all pages of his appeal were legible, and because he did not include the proper number of continuation pages. (ECF No. 1-1 at 7.) The Regional Office gave Mr. Riggleman ten (10) days to resubmit his appeal "in the proper form" and to submit staff verification stating the reason for his untimely filing was not his fault. (*Id.*)

Mr. Riggleman resubmitted his appeal via Remedy 928339-R2 on February 5, 2018. (ECF No. 1-1 at 4 - 6 and ECF No. 5-1 at 20.) Petitioner disputed that his appeal was illegible, incomplete or untimely.

> I can't help if [the DHO's Report] got lost in the inmate mail and did not get to me when it was supposedly of been sent. If the region is contesting this then show documents of when I signed to receive the DHO Report from DHO as it should

> be.  You will not find any documents showing that I sign for
> the DHO report as it should be done.

(ECF No. 1-1 at 4.)[1]  Mr. Riggleman attached a staff memorandum to his appeal confirming that his Unit Team gave him a copy of the DHO report on January 17, 2018. However, the staff member was "unable to confirm if he received [a copy] from the DHO." (*Id.* at 6.)  On February 6, 2018, the Regional Office again rejected the appeal as untimely and found the "staff memo [did] not explain why [his] appeal was late." (*Id.* at 3.)  The appeal was also rejected again because it did not include the proper number of continuation pages and parts were illegible.  (*Id.*)  Petitioner was again granted ten (10) days to resubmit his appeal in the proper form and provide a staff memorandum explaining why the untimely filing of his appeal was not his fault.  (*Id.*)

Mr. Riggleman filed an appeal to the Central Office via Remedy 928339-A1. (ECF No. 1-1 at 1 and ECF No. 5-1 at 21.)  He again contested each of the reasons the Regional Office rejected his Administrative Remedy.  He again requested proof of his receipt of the DHO Report because the date he was alleged to have received it, November 9, 2017, "was three days after I had the DHO hearing not even time to be processed and typed up."  (ECF No. 1-1 at 2.)  Central Office concurred with the decision of the Regional Office and rejected the appeal on March 27, 2018.  (ECF No. 1-1 at 1.)  Mr. Riggleman was given leave to resubmit his appeal to the Regional Office if he could provide a staff memo stating the late filing of his appeal was not his fault. (*Id.*)  No further appeals were filed concerning Incident Report 3039358.

---

[1] Mr. Riggleman repeats this argument in his discovery motion (ECF No. 9).  He asserts that DHO reports are considered legal documents within the prison setting requiring inmates to sign for their receipt.  (*Id.*)  This issue will be addressed *infra.*

## IV. Discussion

Petitioner raises two arguments before the Court: (1) he was denied his due process rights to appeal the DHO's findings when he was not given a timely copy of the DHO Report; and (2) the disciplinary finding was not supported by the evidence presented at the hearing. (ECF No. 1, *generally*.)

### A. Exhaustion of Administrative Remedies.

Respondent asserts that Petitioner may not seek relief in this Court because he failed to properly exhaust his administrative remedies. Petitioner argues he could not properly exhaust his administrative remedies because he was never provided with a timely copy of the DHO's report, and when he requested proof of his receipt, none was provided.

"Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Failure to exhaust, however, is an affirmative defense, and the burden of demonstrating that a prisoner has not exhausted his administrative remedies lies with the Respondent. *See Milhouse v. Warden Lewisburg USP*, 666 F. App'x 98, 100 n. 2 (3d Cir. 2016) (nonprecedential) (citing *Ray v. Kertes*, 285 F.3d 287, 295 – 96 (3d Cir. 2002) (holding respondent must plead and prove exhaustion of administrative remedies as an affirmative defense)). Also, a district court has some discretion to excuse faulty exhaustion and reach the merits. "If a petitioner has failed to exhaust his administrative remedies prior to filing a §2241 petition, the District Court may in its discretion either excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative

remedies before proceeding to court." *Ridley v. Smith*, 179 F. App'x 109 (3d Cir. 2006) (internal quotations and citations omitted); *see also Almanzar v. Hollingsworth*, No. 15-CV-6244, 2017 WL 4390264, at *2 (D.N.J. Oct. 2, 2017).

This is not a case where the Petitioner wholly disregarded the BOP's administrative remedy process. Here there is a clear dispute as to when Mr. Riggleman received the DHO report and whether Petitioner timely, and properly, complied with the BOP's administrative remedy procedure.[2] With respect to the timeliness of Mr. Riggleman's administrative remedy, the date he initially received the DHO Report is critical. Respondent argues Mr. Riggleman received the report on November 9, 2017. *See* ECF No. 5-1 at 41. However, Mr. Riggleman states he first received a copy of the DHO report on January 17, 2018. *See* ECF No. 1-1 at 6. If so, his Administrative Remedy was timely.

Mr. Riggleman argued in his re-submitted appeal to the Regional Office and to Central Office, and in his Petition, that within the BOP a DHO Report is considered a legal document, and as such, he must sign for it upon delivery. Petitioner requested that the "roster" bearing his signature signifying his receipt of the DHO Report be produced during the appeal process and his Petition. The Regional Office, Central Office and Respondent, did not address these issues within the context of the administrative remedy process or the Response to the Petition.

---

[2] In addition to its untimeliness, the Respondent cites additional reasons the Regional Office rejected Mr. Riggleman's Administrative Remedy (failure to include the proper number of continuation pages and that not all pages were legible). However, Petitioner contested each of these assertions in his administrative remedy re-filings. *See* ECF No. 1-1 at 2 and 4. As Respondent did not provide any of the unsatisfactory documents for the Court to review, this argument cannot be fully addressed.

The BOP Administrative Remedy Process allows for the inmate to file his appeal within twenty (20) days of the grieved event. The Inmate Disciplinary Process states that the DHO Report is ordinarily provided to the inmate within fifteen (15) work days of the decision. See Inmate Discipline Program, PS 5270.09 at 34. The Regional Office denied Mr. Riggleman's appeal noting it "was due by 11-29-17." (ECF No. 1-1 at 7.) This date is clearly based upon the date the DHO Report was allegedly delivered to him, November 9, 2017. If the Regional Office calculated the appeal period twenty (20) days from the date of the hearing, October 24, 2017, the present issue of exhaustion would not involve the receipt date of the DHO Report. However, that is not the case. The date Petitioner received the DHO Report is critical to issue of proper exhaustion and remains unresolved.

Given the factual issues involved in resolving Mr. Riggleman's timely and proper exhaustion of the BOP's administrative remedy process, the Court will address the Petition on the merits.[3] See Almanzar, supra, 2017 WL 4390254, at *2 (when the petitioner submitted some documentation that he had filed a timely appeal to the Central Office, the court would look at his petition on the merits even though his appeal had been deemed untimely).

In other words, because Respondent bears the burden of proving exhaustion of administrative remedies as an affirmative defense, and the Court has its doubts that Respondent has met this burden, the Court will not dismiss the Petition based on exhaustion.

---

[3] Because the Court will address the Petition on the merits, Mr. Riggleman's motion (ECF No. 9) to compel Respondent to produce the "roster" that inmates must sign demonstrating their receipt of a legal document, such as a DHO report, will be denied as moot.

In any event, after consideration of the merits of the Petition, Mr. Riggleman does not qualify for the relief he seeks.

**B.    The DHO's Findings were Supported by "Some Evidence".**

Prisoners have a liberty interest in the good conduct time they accumulate while incarcerated. *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); *see also Denny v. Schultz*, 708 F.3d 140, 143 (3d Cir. 2013). A prisoner's interest in good time credits "entitle[s] him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff,* 418 U.S. at 557, 94 S. Ct. at 2974. Prison officials satisfy due process requirements in an administrative disciplinary proceeding if a prisoner receives "(1) advance written notice of the disciplinary charges; (2) an opportunity ... to call witnesses and present documentary evidence; and (3) a written statement from the fact finder which explains the reason for the decision and the supporting evidence." *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985) (citing *Wolff*, 418 U.S. at 563 - 67, 94 S.Ct. at 2978 - 82). In addition, procedural due process requires "some evidence" to support disciplinary action. *Id.*, 472 U.S. at 454, 105 S.Ct. at 2773. The "some evidence" "standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence." *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (*per curiam*) (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)). The relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455 - 56, 105 S. Ct. at 2774. Where a procedural error is

alleged in the context of a prison disciplinary proceeding, the Third Circuit Court of Appeals has held that "[i]n the absence of a showing of prejudice," the outcome of the proceeding should not be overturned. *Griffin v. Warden*, 640 F. App'x 181, 184 (3d Cir. 2016) (*per curiam*).

Importantly, Mr. Riggleman does not allege any procedural errors occurred during the DHO Hearing. His challenge is limited to whether the DHO's findings that the items confiscated from his cell were weapons. Petitioner argues the reporting officer took the items "out of context of what the object in reality truly was & used in their mind the concept of what the object could have been made into, and not fact of what it was." (ECF No. 1 at 6.) The evidence described in the DHO Report (ECF No. 1-1 at 10 – 13) and the photograph of the objects (ECF No. 5-1 at 37) is sufficient to support the DHO's conclusion that Mr. Riggleman committed the prohibited act of possession of a weapon. Petitioner admitted the items depicted in the photograph were retrieved from his cell and that he had no cellmate at the time. DHO's conclusion that Mr. Riggleman was in possession of the items is supported by the evidence in the report, and more importantly, by Petitioner's admission at the hearing. While Mr. Riggleman used the two two-inch flattened and shelled out AA battery cases to "fish" or slide items such as magazines or newspapers from one inmate's cell to another ("things that the officers will not pass back and forth"), does not mean the item could not be used as a weapon (by Petitioner or others without modification) as discussed by the DHO in his report. (ECF No. 1 at 2.) Although Mr. Riggleman may not have intended to use the altered batteries casings as a weapon, as the DHO conceded, Petitioner admits that "the object could have been made into" a weapon as believed by the officer issuing the incident report and the DHO. (*Id.* at 6.) The fact that Mr. Riggleman passed this object to other

inmates, who may not have been as conservative as Petitioner about its use, underscores the DHO's concern that the confiscated items could be used as a weapon. The DHO described the items as appearing "to have been crafted into a homemade razor blade approximately two inches in length, concealed inside another flattened battery, which appeared to be acting as a sheath for the homemade razor blade." (ECF No. 1-1 at 12 – 13.) The DHO's finding that the item confiscated from Mr. Riggleman's cell was a weapon is supported by the evidence in the record.[4] That evidence is sufficient to satisfy the "some evidence" standard, in that there was some evidence before the DHO to support his decision that Mr. Riggleman was in possession of a weapon. Accordingly, Mr. Riggleman's due process rights were not violated when the DHO disallowed forty-one (41) days good conduct time as a sanction for his violation of BOP Code 104, possession of a weapon.

An appropriate order follows.

**Date: March 29, 2019**                /s/ A. Richard Caputo
                                                  **A. RICHARD CAPUTO**
                                                  **United States District Judge**

---

[4] On August 16, 2018, Mr. Riggleman filed a motion to present an exhibit (ECF No. 11). He affixed a homemade razor blade to the motion to demonstrate "what is & what is not a homemade razor." (*Id.*) The Court will grant Petitioner's motion to the extent that the razor blade forwarded to the Court, which was intercepted by the Marshall's Office, did not resemble the items confiscated from his cell. This fact does not alter the Court's conclusion that the record in this matter supports the DHO's conclusion that the flattened battery cases could be used as a weapon, regardless of Petitioner's intent.